**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Lamar Boyd, et al.,** | **Case No. 1:25-cv-02387-PAB** |
| **Plaintiffs,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Beachwood City School District Board of Education, et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Currently pending before the Court is Plaintiffs Lamar Boyd and Thais Antonio's Combined Motion for Temporary Restraining Order[1] and Motion for Summary Judgment (the "Motion"). (Doc. No. 3.)  Defendants Beachwood City School District Board of Education, Dr. Rober Hardis, Ken Veon, Grave Perryman, and Jane Does Receptionist (the "Beachwood Defendants") filed an Opposition on April 24, 2026.  (Doc. No. 15.)  Defendant Officer Colton Pekarski ("Pekarski") filed his own Opposition on April 24, 2025 as well.   (Doc. No. 17.)  Plaintiffs did not file a Reply.  For the reasons stated herein, the Motion is DENIED.

I.      **Background**

On November 5, 2025, Plaintiffs filed their Verified Complaint.  (Doc. No. 1.)   Therein, Plaintiffs allege:

11. From September 3-12, 2025, the District had no active registrar or designated enrollment officer; enrollments were effectively on hold, and no designee was offered to families.

12. During that period and thereafter, Plaintiffs repeatedly attempted to enroll their children with complete documentation, including a notarized Affidavit/Power of

---

[1] Because Plaintiffs did not comply with procedural requirements necessary for the Court to issue a temporary restraining order, the Court construes this as a request for a preliminary injunction.

Attorney from the biological parents, proof of residence in Beachwood, and IEP records.

13. There was no custody dispute, and Ohio law did not require a court order for enrollment where children reside with a responsible adult and documentation is provided (e.g., R.C. § 3313.64 and Chapter 3109 caretaker/POA options referenced in Plaintiffs' email correspondence).

14. Registrar Grace Perry (Perryman) refused to process the documents, told Ms. Antonio to "worry about your own biological son," discarded paperwork, and then left the office without any designee for approximately nine days, preventing enrollment.

15. Plaintiffs' email record to District leadership documents the legal basis for enrollment via caretaker affidavit/POA and residence, and the District's incorrect claim that only court-ordered custody would be accepted.

16. Plaintiffs' follow-up emails and calls were ignored. Only after inquiry from Judge Kilbane's chambers did the District claim it was "working to enroll" the children; in practice, enrollment was not processed and new, unnecessary demands were added (e.g., death certificate; in-person ID checks; contradictory statements about who could enroll).

17. On September 15 and September 19, 2025, Plaintiffs appeared at the District office to resolve enrollment. The receptionist (Jane Doe I) directed Plaintiffs to call Registrar Perry and then summoned Assistant Superintendent Veon.

18. While Plaintiffs were calmly on the phone with Perry, Veon exited his office and confronted Plaintiffs in a hostile manner. Plaintiffs possess video from September 19, 2025 showing their peaceful conduct and Veon's escalation.

19. Superintendent Bardis reported to police that Plaintiffs caused a "disturbance" on September 19, leading Officer [Pekarski] to issue a two-year trespass ban on September 22, 2025, although [Pekarski] noted he was out of town during the incident and issued the ban later.

20. The Beachwood Police incident report reflects the District's "disturbance" narrative and records issuance of the two-year ban effective 9/22/2025 across District property.

21. In later motion papers, District counsel alleged Mr. Boyd "blocked the registrar's car"—an assertion not contained in the police report and contradicted by Plaintiffs' video evidence.

2

22. Superintendent Bardis authored or caused administrative records that falsely portrayed Plaintiffs' conduct, which the District relied upon to justify the ban.

23. On October 27, 2025, during mediation before Judge Kenneth R. Callahan, District counsel requested a continuance of the November 6 hearing to allow pre-litigation resolution. Plaintiffs relied on that representation and submitted a written proposal on October 29, 2025 for Board/insurer review.

24. Without notifying Plaintiffs of any withdrawal of the continuance request, counsel announced during a November 3, 2025 teleconference that the District would proceed with the November 6 hearing, after providing no confirmation of Board/insurer review.

25. As a result of Defendants' acts, Plaintiffs and their children suffered severe emotional distress, anxiety, and mental health harm, including sleep disruption, loss of trust in school officials, family instability, and the children's devastation from being unable to begin school on time. Plaintiffs also suffered reputational damage and economic loss.

(Doc. No. 1, ¶¶ 11–25.)

On November 14, 2025, Plaintiffs filed their Motion.  With respect to their request for an injunction, Plaintiffs request that the Court issue an injunction that would (1) "[l]ift the unlawful ban preventing Plaintiffs from entering school grounds;" (2) "[p]rohibit ongoing retaliation or enforcement of any trespass warning based on falsified statements;" (3) "[p]revent use or dissemination of the falsified incident report, which continues to cause reputation and legal harm;" and (4) "[r]estore access to educational programs, enrollment services, and school events for Plaintiffs and their children."  (Doc. No. 3, PageID #18.)  On April 24, 2026, the Beachwood Defendants and Pekarski filed their Oppositions.  Plaintiffs did not file a reply.  Accordingly, Plaintiffs' Motion is ripe for review.

## II.     The Court Denies Plaintiffs' Motion for Summary Judgment

Before turning to Plaintiffs' request for an injunction, the Court first addresses Plaintiffs' request for summary judgment.   Summary judgment is generally reserved for a point in time when

3

discovery has taken place. *See McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005) (holding that the district court erred in prematurely granting summary judgment where no discovery had taken place). For this reason, the undersigned generally does not permit parties to file a motion for summary judgment prior to the close of discovery without express leave of court. *See* Standard Pro Se Case Management Scheduling Order.[2] Accordingly, because this case has not progressed past the pleading stage, the Court denies Plaintiffs' request for summary judgment. *See Tauwab v. Barry*, No. 5:13cv2036, 2014 U.S. Dist. LEXIS 118674, at *27 (N.D. Ohio Aug. 25, 2014) ("This case is in its infancy, as the Court has yet to hold a CMC and, as far as the Court is aware, no discovery has taken place. Any ruling on summary judgment now would be premature, and any summary judgment motion would be denied or stayed until discovery could take place"); *Muniz-Muniz v. United States Border, Customs & Border Prot.*, No. 3:09CV2865, 2014 U.S. Dist. LEXIS 1864040, at *6 (N.D. Ohio May 28, 2014) ("Finding summary judgment premature at this juncture because discovery is incomplete, this Court also declines the Federal Defendants' invitation to grant summary judgment on the record as it now stands"). If Plaintiffs' Complaint survives Defendants' 12(b)(6) challenges,[3] Plaintiffs' may refile their requests for summary judgment after the close of discovery.

### III. The Court Denies Plaintiffs' Motion for Temporary Restraining Order

The Court next addresses Plaintiffs' request for an injunction. When considering a motion for preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without

---

[2] Plaintiffs can access a copy at https://www.ohnd.uscourts.gov/content/judge-pamela-barker.

[3] The Court will issue a separate Order concerning the parties' myriad briefing concerning the sufficiency of Plaintiffs' Complaint.

an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction.  *See National Credit Union Administration Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

Although the Sixth Circuit has historically instructed district courts that these factors are "not prerequisites that must be met," *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985), the Sixth Circuit has held that a lack of irreparable harm is fatal to a request for a preliminary injunction. *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327–28 (6th Cir. 2019).  As explained by the *D.T.* court, "this factor *is* dispositive; a plaintiff *must* present the existence of an irreparable injury to get a preliminary injunction."  *Id.* at 327.  "Thus, a district court is 'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury."  *Id.* (quoting *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991)).

Because the irreparable injury factor is dispositive, the Court begins, and ends, its analysis with that factor.

In their Motion, Plaintiffs argue that "Plaintiffs and their minor children are suffering ongoing, irreparable harm through: [i] deprivation of parental access to public education services; [ii] stigma and reputation injury form the District's defamatory accusations; [iii] emotional distress and anxiety documented in sworn declarations and medical records; and [iv] continued enforcement of a ban issued without due process."  (Doc. No. 3, PageID #18.)  They further argue, citing to *Elrod v. Burns*, 427 U.S. 347 (1976), that "irreparable harm is presumed when constitutional rights are violated." (*Id.*)

In Pekarski's Opposition, he argues that "the plaintiffs do not have a right to access the School

District property in the first instance" and "the Trespass Ban has built in four exceptions to enable the plaintiffs to access their children for educational needs." (Doc. No. 17, PageID #297.) He further argues that "[t]he plaintiffs have failed to identify any harm from not having unlimited access to School District property." (*Id.*)

The Beachwood Defendants make similar arguments. They argue that "the District's Trespass Notice permits Plaintiffs to attend school conferences and access school buildings with preapproval" and that Plaintiffs "have, in fact, participated in educational meetings, staff conferences, and pick-up and drop-off." (Doc. No. 15, PageID #208.) Specifically, the Beachwood Defendants assert that "Boyd attended an in-person educational meeting on February 12, 2026 and appeared telephonically on February 17, 2026," and "[h]e was also invited multiple times to a March 2026 meeting for another child, but declined to attend." (*Id.*) And, according to the Beachwood Defendants, "Antonio attended an in-person meeting on October 21, 2025, and communicates about her child via email." (*Id.*) They further argue that "alleged emotional distress and purported stigma can be sufficiently remedied when this litigation concludes." (*Id.*)

Upon consideration of the parties' arguments, and the exhibits attached to their briefing, the Court agrees with the Defendants that Plaintiffs have failed to establish irreparable harm. The Court addresses each of Plaintiff's arguments in turn below.

      **1.**     **Plaintiffs have not been deprived of parental access to public education services**

Plaintiffs have not established that they are being deprived "of parental access to public education services." First, courts do not recognize a right to unfettered access of public schools. *Guy v. Bd. of Educ. Rock Hill Local Sch. Dist.*, No. 1:18-cv-893, 2020 U.S. Dist. LEXIS 94778, at *13 (S.D. Ohio May 31, 2020) ("Plaintiff has not directed the Court to any authority, in this jurisdiction

6

or elsewhere, that establishes she has a liberty interest in attending school functions or being on school property"). Indeed, at least two courts in this Circuit have expressly found that "[e]very court that has considered the issue has concluded that citizens, including parents do not have a liberty or property interest in accessing school property." *Gray v. Winton Woods City Sch.*, No. 1:23-cv-553, 2024 U.S. Dist. LEXIS 101752, at *13 (S.D. Ohio June 7, 2024) (quoting *Johnson v. Know Cnty.*, No. 3:19-cv-179, 2022 U.S. Dist. LEXIS 54166 (E.D. Tenn. Mar. 25, 2022); *see also Jones v. Lakeview Sch. Dist.*, No. 4:06cv630, 2007 U.S. Dist. LEXIS 52353, at *17 (N.D. Ohio July 18, 2007) ("A parent's right to access school grounds is not unlimited"). Although the Sixth Circuit itself has not spoken on this issue, other Courts of Appeals agree—a parent does not have a right to access school property. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744 (9th Cir. 2025) ("Hartzell was banned from accessing school property. This does not implicate Hartzell's right to direct her children's education"); *Jakson v. McCurry*, 762 F. App'x 919, 929 (11th Cir. 2019) ("And the few decisions of our sister circuits reviewing claims similar to Jackson's have uniformly concluded that there is no clearly established right for parents to access school property to exercise their rights under the First Amendment"); *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) ("we cannot conclude that a parent has a general and unlimited First Amendment right of access to school property"); *Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (holding that a parent's "assertions that school administrators must provide him with boundless access to school property are 'obviously without merit'").

Regardless, the record shows that Plaintiffs, and their children, have access to Beachwood Schools notwithstanding the trespass ban. The police report, which Plaintiff's attach to their Motion, provides in the relevant part:

7

> I spoke with Superintendent HARDIS and he wants [Plaintiffs] both to be trespassed from 9/22/2025 to 9/22/2027. They are not permitted to be on any Beachwood City School District Property or at any school sponsored events. The only special circumstances that allow either of them on the property are: Special circumstances that allow you to enter the school grounds are the following:
>
> 1.) Need to transport their children to or from school. Only allowed on the grounds for as long as it takes to complete the drop-off or pick-up process.
>
> 2.) Need to attend an educational conference with school staff about a child or participate in an in-person IEP meeting – this must be done with pre-approval from the building principal or Superintendent.
>
> 3.) If other circumstances require that they come to the school, for example, delivering a forgotten lunch or school supply, they may bring it to the front door of the school, where the school officer will meet them to bring the material inside – this must be done with pre-approval from the building Principal or Superintendent.
>
> 4.) Anytime you have written pre-approval from the building Principal or Superintendent.

(Doc. No. 3-3, PageID #56.) Thus, the trespass ban permits Plaintiffs to drop off and pickup their children, to attend school meetings with permission, and to drop off things for their children while the children are at school.

Moreover, the record reflects that Plaintiffs' children are enrolled in, and attending, Beachwood schools. (Doc. No. 15-4, Srithai Aff. ¶ 4; Pinney Aff. ¶¶ 4,7; Doc. No. 21-1, ¶ 116.) And Plaintiffs have not disputed the evidence submitted by the Beachwood Defendants showing that Plaintiffs have attended in-person meetings at the school and that they have picked up and dropped of their children at school. (Doc. No. 15-1, ¶ 11; Doc. No. 15-4, Srithai Aff. ¶ 5; Doc. No. 15-4, Pinney Aff. ¶¶ 6, 10.) Simply put, Plaintiffs have not presented evidence showing that they are being denied "parental access to public education services."

### 2. Plaintiffs' reliance on *Elrod v. Burns* is misplaced

For similar reasons, Plaintiff's reliance on *Elrod v. Burns*, 427 U.S. 347 (1976) is insufficient

to establish irreparable harm. In *Elrod*, the Supreme Court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373. But as the above cited authority makes clear, Plaintiffs do not have a right, let alone a First Amendment right, to access a public school. *See*, *e.g.*, *Johnson*, 859 F.3d at 175 ("we cannot conclude that a parent has a general and unlimited First Amendment right of access to school property"). Therefore, Plaintiffs cannot rely upon *Elrod* to establish irreparable harm in this case.

### 3. Plaintiffs have not established irreparable harm based upon the continued enforcement of a ban issued without due process.

The Court next rejects Plaintiff's assertion that that they are suffering irreparable harm based on "continued enforcement of a ban issued without due process." Plaintiffs have not explained how the ban was "issued without due process" or how the supposed lack of due process results in irreparable harm. Indeed, Boyd avers in his Declaration that he was given notice of the trespass ban. (Doc. No. 3-6, Boyd Declaration, ¶ 7 ("As a direct result, Beachwood Police came to my residence and banged on my door to serve a two-year trespass ban").) Thus, the Court finds that Plaintiffs were afforded due process and are not facing irreparable harm on this basis. *See*, *e.g.*, *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) ("The fundamental requisite of due process of law is the opportunity to be heard"); *see also Downing v. Life Time Fitness, Inc.*, No. 10-11037, 2010 U.S. Dist. LEXIS 136928, at *14–15 (E.D. Mich. Dec. 28, 2010) (rejecting the plaintiff' argument "that her exclusion from a public place without due process results in irreparable reputational harm"); *Brown v. Dayton Metro. Hous. Auth.*, No. C-3-93-037, 1993 U.S. Dist. LEXIS 21297, at *88 (S.D. Ohio Aug. 26, 1993) (refusing to enjoin criminal trespass ban because, among other things, "Officer Clark's issuance of a trespass notice to Clack provided him with notice of and an opportunity to be heard about the deprivation of a liberty interest and, hence, did not violate procedural due process").

Put simply, the Court finds this basis insufficient to establish irreparable harm.

### 4. Plaintiffs' have not established that they face irreparable harm to their reputation

Although reputational harm can sometimes qualify as irreparable harm, "[w]hen seeking . . . injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing *Bras v. California Pub. Utils. Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995)). In other words, "[p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive . . . relief." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019).  Stated succinctly, "[w]hat occurred in the past is legally irrelevant to the irreparable harm analysis." *Lucas v. Jessee*, No. 3:24-cv-00440, 2024 U.S. Dist. LEXIS 84501, at *8 (M.D. Tenn. May 9, 2024) (citing *Sharpe v. Cureton*, 319 F.3d 259, 274 (6th Cir. 2003); *Stone v. Ohio Parole Bd.*, No. 2:21-cv-884, 2021 U.S. Dist. LEXIS 63442, at *9 (S.D. Ohio Apr. 1, 2021)).

Here, Plaintiffs present no evidence that they are suffering present or future harm to their reputation.  Boyd avers in his affidavit that Defendants "caused irreparable harm to [his] reputation" and that he "lost employment opportunities and community standing." (Doc. No. 3-6, ¶¶ 9, 12.)  And Antonio does not even aver in her Declaration that Defendants have harmed her reputation and there is no evidence that her reputation has been harmed.  Plaintiffs may be entitled to damages for their alleged reputational harm, but they are not entitled to an injunction based on that harm. *See*, *e.g.*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (". . . because any damages would be economic in nature and fully compensable monetarily, we find no potential for irreparable harm . . .").

5.    **Plaintiffs' alleged emotional distress in insufficient to establish irreparable harm**

Finally, Plaintiffs' alleged emotional distress is insufficient to carry the day.  Recently, the Sixth Circuit has found that "[o]ur circuit has not declared emotional distress—standing alone–sufficient to satisfy the irreparable harm requirement." *Shangrila P'Ship v. Lemos*, No. 25-1495, 2025 U.S. App. LEXIS 30638, at *11 (6th Cir. Nov. 20, 2025) (affirming denial of preliminary injunction).  But more importantly, it is unclear how an injunction would prevent future emotional distress in this case.  Boyd avers that Defendants "inflicted economic, psychological and emotional damages" and that he "suffered trauma, anxiety, insomnia, and symptoms consistent with Intentional Infliction of Emotional Distress." (Doc. No. 3-6, Boyd Declaration ¶¶ 12–13.)  These are past harms that can be remedied through monetary damages.  *Sullivan v. Hamilton Cnty. Common Pleas Court*, No. 1:22-cv-763, 2023 U.S. Dist. LEXIS 77333, at *5 (S.D. Ohio May 2, 2023) ("In the event plaintiff succeeds on the merits of his claims, monetary relief is available to remedy plaintiff's alleged harm").

As to Antonio, she makes similar averments but also avers that "[t]he experience triggered severe psychological symptoms," that she has "since refused to enter the building out of fear or more false accusations," and that she "suffer[s] chronic insomnia, panic attacks, hypervigilance, and emotional shutdowns."  (Doc. Nop. 3-6, Antonio Declaration ¶ 6.)  She also avers that she "experience[s] physical symptoms like chest tightness and trembling when thinking about entering the building," and that "[t]hese events caused lasting emotional and psychological damages to both me and the children in my care." (*Id.* at ¶¶ 8, 10.)  But Antonio does not aver that the trespass ban is the cause of her emotional distress.  Instead, Antonio's alleged emotional distress, as averred in her Declaration, relates to her experience with enrolling the children in Beachwood schools.  Thus, the Court finds that issuing Plaintiffs' proposed injunction would not prevent her alleged emotional

11

distress from continuing.

For all these reasons, Plaintiffs' have not shown that they are facing irreparable harm based upon their alleged emotional distress.

## IV.     Conclusion

For the reasons set forth herein, Plaintiffs' Motion (Doc. No. 3) is DENIED.  Plaintiffs are further advised that the Court will not consider any further requests for injunctive relief related to the trespass ban.  Further, the Clerk is instructed to not accept any Motions for Summary Judgment filed by Plaintiffs until after fact discovery has closed.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_  
PAMELA A. BARKER  
Date:  June 25, 2026                          U. S. DISTRICT JUDGE

12