**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Lamar Boyd, et al.,**

**Plaintiffs,**

**-vs-**

**Beachwood City School District Board of Education, et al.,**

**Defendants.**

**Case No. 1:25-cv-02387-PAB**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court are several motions:

1. Defendants Beachwood City School District Board of Education, Dr. Robert Hardis, Ken Veon, Grave Perryman, and Jane Does Receptionist (the "Beachwood Defendants") filed a Motion to Dismiss. (Doc. No. 14.) Plaintiffs filed an Opposition, to which the Beachwood Defendants replied. (Doc. Nos. 18, 30.)

2. Defendant Colton Pekarski ("Pekarski") filed a Motion for Judgment on the Pleadings. (Doc. No. 16.) Plaintiffs filed an Opposition, to which Pekarski replied. (Doc. Nos. 23, 25.)

3. Plaintiffs filed a Motion for Leave to File First Amended Complaint (the "First Motion for Leave"). (Doc. No. 19.) Pekarski filed an Opposition and the Beachwood Defendants filed an Opposition. (Doc. Nos. 24, 31.) Plaintiffs did not file a reply.

4. Plaintiffs filed a Motion to Disregard Defendants' Improper References to a Pending, Unrelated Criminal Matter (the "Motion to Disregard"). (Doc. No. 21.) The Beachwood Defendants filed an Opposition. (Doc. No. 29.) Plaintiffs did not file a Reply.

5. Plaintiffs filed a Motion to Preserve Relevant Evidence (the "Motion to Preserve)". (Doc. No 22.) The Beachwood Defendants filed an Opposition. (Doc. No. 28.) Plaintiffs did not file a Reply.

6. Plaintiffs filed a Motion for Leave to File Second Amended Complaint (the "Second Motion for Leave"). (Doc. No. 27.) The Beachwood Defendants filed an Opposition, to which Plaintiffs replied. (Doc. Nos. 32, 34.)

7. The Beachwood Defendants and Pekarski filed a Joint Motion for an Order Prohibiting the use of Generative AI (the "AI Motion"). (Doc. No. 33.) Plaintiffs filed an Opposition, to which the Beachwood Defendants and Pekarski replied. (Doc. Nos. 34, 35.)

8. Plaintiffs filed a Motion for Leave to Supplement ECF No. 21, Request for Judicial Notice of Subsequent Judgment, Entry, and Notice Regarding Previously Submitted Video Evidence (the "Motion for Leave"). (Doc. No. 38.) On September 9, 2026, the Beachwood Defendants filed an Opposition, to which Plaintiffs replied. (Doc. Nos. 39, 41.)

For the following reasons, the Second Motion for Leave (Doc. No. 27) is GRANTED in part and DENIED in part. The Court finds that Plaintiffs' proposed claim for First Amendment retaliation against the Beachwood Defendants in the Second Amended Complaint (the "SAC") (Doc. No. 27-1) is not futile. The Court, however, finds that the remaining claims are futile. Accordingly, the SAC is deemed filed as of the date of this Memorandum Opinion & Order. Counts II, III, IV and V of the SAC against the Beachwood Defendants are dismissed with prejudice. All claims remain pending against Pekarski. Because the SAC is now the operative complaint, the Motion to Dismiss (Doc. No. 14), Motion for Judgment on the Pleadings (Doc. No. 16), and First Motion for Leave (Doc. No. 19) are DENIED as moot. Additionally, the Motion to Disregard (Doc. No. 21), the Motion to Preserve

(Doc. No. 22), the AI Motion (Doc. No. 33) and the Motion to Supplement (Doc. No. 38) are each DENIED.

## I. Procedural Background

On November 5, 2025, Plaintiffs filed their Verified Complaint. (Doc. No. 1.) On November 14, 2025, Plaintiffs filed a Combined Motion for Temporary Restraining Order and Motion for Summary Judgment (the "TRO Motion"). (Doc. No. 3.)[1]

On April 21, 2026, Pekarski filed his Answer to the Verified Complaint. (Doc. No. 13.) On April 24, 2026, the Beachwood Defendants filed their Motion to Dismiss, and an Opposition to Plaintiffs' TRO Motion. (Doc. Nos. 14, 15.) That same day, Pekarski filed a Moton for Judgment on the Pleadings, and an Opposition to the Plaintiffs' TRO Motion. (Doc. No. 16, 17.)

On April 28, 2026, Plaintiffs filed their Opposition to the Beachwood Defendants' Motion to Dismiss. (Doc. No. 18.) Plaintiffs also filed the First Motion for Leave. (Doc. No. 19.) Plaintiffs further filed an additional two motions: (1) the Motion to Disregard, and (2) the Motion to Preserve. (Doc. Nos. 21, 22.)

Then, on May 4, 2026, Plaintiffs filed their Opposition to Pekarski's Motion for Judgment on the Pleadings and filed a Reply brief responding to Pekarski's Opposition to the TRO Motion. (Doc. No. 25, 26.) That same day, on May 4, 2026, Pekarski filed is Reply in support of his Motion for Judgment on the Pleadings, and an Opposition to the First Motion for Leave. (Doc. Nos. 23, 24.)

Three days later, Plaintiffs filed the Second Motion for Leave. (Doc. No. 27.) Then, on May 11, 2026, the Beachwood Defendants filed (1) an Opposition to the Motion to Disregard, (2) an Opposition to the Motion to Preserve, (3) a Reply in support of their Motion to Dismiss, and (4) an

[1] On June 25, 2026, the Court denied the TRO Motion.

Opposition to the First Motion for Leave. (Doc. Nos. 28, 29, 30, 31.) Subsequently, on May 20, 2026, the Beachwood Defendants filed an Opposition to the Second Motion for Leave. (Doc. No. 34.) Pekarski did not file an Opposition to the Second Motion for Leave. On May 21, 2026, Plaintiffs filed their Reply in support of the Second Motion for Leave. (Doc. No. 34.)

The parties' filing of motions did not end there. On May 22, 2026, the Beachwood Defendants and Pekarski filed the AI Motion. (Doc. No. 33.) That same day, Plaintiffs filed an Opposition to the AI Motion. (Doc. No. 35.) On May 29, 2026, Beachwood Defendants and Pekarski filed a Reply in support of the AI Motion. (Doc. No. 36.)

Two months later, on August 31, 2026, Plaintiffs filed the Motion to Supplement. (Doc. No. 38.) On September 9, 2026, the Beachwood Defendants filed an Opposition to the Motion to Supplement. (Doc. No. 39.) Pekarski did not file an Opposition to the Motion to Supplement. On September 14, 2026, Plaintiffs filed their Reply in support of the Motion to Supplement. (Doc. No. 41.)

Accordingly, the Motion to Dismiss, the Motion for Judgment on the Pleadings, the First Motion for Leave, the Motion to Disregard, the Motion to Preserve, the Second Motion for Leave, the AI Motion, and the Motion to Supplement are ripe for this Court's review.

## II. Analysis

### A. The Court denies the Motion to Preserve

In the Motion to Preserve, Plaintiffs request that the Court enter an order "directing Defendants to preserve all evidence relevant to this action, including electronically stored information and physical records." (Doc. No. 22, PageID #314.) The Beachwood Defendants argue in Opposition that "[t]he Motion to Preserve is superfluous, because the obligation Plaintiffs ask this Court to impose already exists and applies to them as well as to the School District Defendants." (Doc. No.

28, PageID #357.)

The Court agrees with the Beachwood Defendants that the Motion to Preserve Relevant Evidence is superfluous. Defendants already have a duty to preserve relevant evidence in this action. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI . . . ."); *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) ("The common law imposes the obligation to preserve evidence from the moment that litigation is reasonably anticipated"). The Motion to Preserve is therefore denied.

**B. The Court denies the Motion to Disregard**

Plaintiffs argue in the Motion to Disregard that the Court should "disregard Defendants' references to Mr. Boyd's pending, unrelated criminal matter when deciding Defendants' opposition to temporary injunctive relief and any merits-based issue in this civil-rights case." (Doc. No. 21, PageID #310.) The Beachwood Defendants argue in their Opposition that they "raised [the criminal case] in response [to Plaintiffs' request] for a TRO, not in their Motion to Dismiss." (Doc. No. 29, PageID #364.)

The Court denies the Motion to Disregard as premature at this stage. First, the Court cannot consider the criminal matter when reviewing the briefing that challenges Plaintiffs' Complaint, proposed FAC and proposed SAC because the criminal matter is not referenced in the pleadings. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained

therein"). Second, the Beachwood Defendants only raised the criminal matter to oppose Plaintiffs' request for a temporary restraining order, which the Court already denied. For these reasons, the Court will not consider the criminal matter at this time, but the Court may consider it later to the extent it may do so under the Federal Rules of Evidence and/or is relevant to any matter pending before the Court.[2]

### C. The Court denies the Motion to Supplement

For similar reasons, the Court denies the Motion to Supplement. (Doc. No. 38.) Plaintiffs request that the Court (1) grant them "leave to supplement ECF No. 21" with the disposition of the criminal matter, (2) take judicial notice of the final journal entry in the criminal matter, (3) "treat ECF No. 21 as supplemented to reflect that the criminal matter . . . has terminated without conviction," (4) "decline to treat the February 2026 criminal charges or underlying police allegations as adjudicated proof of violent conduct, dangerousness, school-safety risk, or lack of credibility," (5) "recognize that Plaintiffs do not seek reconsideration through this filing of the Court's prior disposition of Plaintiffs' TRO or premature summary-judgment request," (6) "[d]irect that previously submitted September 19, 2025 video evidence and related digital media remain preserved and associated with this action for use at procedurally appropriate later stages, or alternatively permit Plaintiffs to re-submit that evidence through an approved method if necessary," and (7) "preserve Plaintiffs' ability to seek appropriately tailored discovery concerning the source, transmission, and litigation use of the February criminal-case information if discovery proceeds." (*Id.* at PageID #38.) These requests are all premature.

First, because the Court cannot consider the criminal matter (and its disposition) at the

---

[2] The Court offers no opinion at this time whether it can consider the criminal matter in this case.

pleadings stage there is no need for the Court to take judicial notice of the journal entry at this time. Second, the Court will not enter an order regarding the "video evidence and related digital media." Plaintiffs may cite previously filed video evidence going forward and they may refile it to the extent necessary as the case proceeds. Third, there is no need to "preserve" Plaintiffs ability to seek discovery in this case. The Federal Rules of Civil Procedure govern how and when discovery requests may be served. *See generally* Fed. R. Civ. P. 26, 30, 33, 34, 36. For all these reasons, the Motion to Supplement is denied.

**D. The Court denies the AI Motion**

Before turning to the parties briefing concerning the pleadings, the Court finally addresses Defendants' Joint Motion for an Order Prohibiting the Use of Generative AI. (Doc. No. 33.) Defendants assert that "Plaintiffs' continued submissions . . . bear the hallmark content of AI-generated material" and "bear the hallmark style of AI-generated material including in-line header vertical lists . . . overuse or misuse of boldface type . . . and links to code or tags in the output text." (*Id.* at PageID #397.) Defendants point out that "in Plaintiffs' most recent filing – Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 27) – Plaintiffs' submission went so far as to hallucinate a Board policy that simply does not exist." (*Id.*) Defendants assert that "[p]ursuant to the Court's inherent authority as well as Fed.R.Civ.P. 11, the Court may enter an order prohibiting the use of artificial intelligence in the preparation of any filings submitted to the Court." (*Id.* at PageID #398.) Defendants alternatively request that "the Court could order any party who uses generative AI to help generate the content of any portion of a pleading, motion, brief, or other document to submit a declaration disclosing the use of generative AI." (*Id.*)

In their Opposition, Plaintiffs acknowledge that they cited to a hallucinated Beachwood City

Schools policy and "accept responsibility" for that mistake. (Doc. No. 35, PageID #414–15.) They further "recognize and accept their obligations under Federal Rule of Civil Procedure 11." (*Id.* at PageID #414.) Plaintiffs assert that "Defendants do not identify any fabricated judicial opinion, nonexistent statute, fictitious quotation, or misrepresented judicial holding submitted by Plaintiffs." (*Id.*) They further assert that "[t]o the extent Plaintiffs used any drafting or organizational assistance, Plaintiffs remained the source of the facts, reviewed the final content, and accept responsibility under Rule 11." (*Id.* at PageID #415.) Plaintiffs assert that "[t]he Court should deny the requested blanket prohibition because Defendants have not shown the type of misconduct that would justify such an extraordinary restriction." (*Id.* at PageID #414.)

Defendants respond in their Reply "by setting forth various examples of fabricated case law, misrepresented holdings, and fictitious quotations that Boyd and Antonio have already submitted to this Court." (Doc. No. 36, PageID #418.) Defendants point to 12 examples from the TRO Motion (Doc. No. 3) where Plaintiffs "fabricated case law," cited "fictious citations," and "misrepresented holdings." (*Id.* at PageID #419–422.) Defendants argue that "these examples cast significant doubt on Plaintiffs' assurances that they: (1) verified the factual content of their filings; (2) reviewed the final content; (3) accept responsibility under Rule 11; and (4) checked legal citations and authorities to the best of their ability." (*Id.* at PageID #422.)

The Court has had the occasion to speak on counsel's misuse of artificial intelligence:

> The Court recognizes the benefits of AI for litigants. *Willis v. U.S. Bank, N.A.*, 738 F.Supp.3d 959, 960 (N.D. Tex. 2025) ("the Court is not opposed to the use of AI and recognizes that when done right, AI can be incredibly beneficial for attorneys and the public") (cleaned up); *Nixon v. West*, No. 1:25-cv-575, 2025 U.S. Dist. LEXIS 171094, at *12–13 (N.D. Ohio Sept. 3, 2025) ("Artificial intelligence has the potential to help litigants like Plaintiff who do not have access to a lawyer. In this respect, this nascent tool may prove helpful in promoting access to justice"). And there is nothing generally preventing a litigant from using AI software for

> research assistance or for drafting briefs. *Bunce v. Visual Tech. Innovations, Inc.*, No. 23-1740, 2025 U.S. Dist. LEXIS 36454, at *9 (E.D. Pa. Feb. 27, 2025) ("There is nothing in Rule 11 that specifically prohibits reliance on AI for research assistance. . . .").
>
> "But, along with its potential benefits, using AI involves risk." *Willis*, 738 F.Supp.3d at 960. AI software "do[es] not—and cannot—decide what is true and what is false." *Buckner v. Hilton Glob.*, No. 3:24-cv-375-RGJ, 2025 U.S. Dist. LEXIS 117533, at *15 (W.D. Ky. June 18, 2025). "Indeed, at times, they just make stuff up—a phenomenon some A.I. researchers call hallucinations." *Id.* These "hallucinations" include citing cases that "often have reporter citations that lead to cases with different names, in different courts, and about different subjects." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (Fed. Cl. 2025) (collecting cases). Even worse, AI software has the tendency to cite cases that do not even exist. *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F.Supp.3d 767, 770 (W.D. Va. 2025). And even if the AI software clears these hurdles and provides accurate case citations, AI software has the tendency to mispresent the holdings of the cited cases. *Id.*
>
> * * *
>
> Put simply, citing hallucinated fake cases is a violation of Rule 11. *See*, *e.g.*, *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) ("using a fake opinion to support an argument is a violation of Rule 11(b)(2)"); *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 343 (E.D.N.Y. 2025) ("To start with the obvious, an attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure") (emphasis in original); *Mata*, 678 F. Supp. 3d at 461 ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law"). And, as it always has, misrepresenting the holdings of case law violates Rule 11. *Ali v. IT People Corp., Inc.*, No. 2:25-CV-108515, 2025 U.S. Dist. LEXIS 184888, at *5 (E.D. Mich. Sept. 19, 2025) (holding litigant violated Rule 11 when he "admitted that he misrepresented an alleged quotation" in a case and made a false statement about the effect of a Michigan statute); *Pelishek v. City of Sheboygan*, No. 23-CV-1048, 2025 U.S. Dist. LEXIS 183238, at *3, 6–7 (E.D. Wisc. Sept. 18, 2025) (holding counsel violated Rule 11 when, among other things, they "misrepresented what courts have said"); *Pettit v. Allina Health Sys.*, No. 23-cv-2789 (JWB/JFD), 2025 U.S. Dist. LEXIS 16511, at *25 (D. Minn. Jan. 30, 2025) ("Mispresenting the legal significance of a case or the holding in a case is a violation of Rule 11(b)(2)").

*Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033-PAB, 2025 U.S. Dist. LEXIS 205253, at

*8–11 (N.D. Ohio Oct. 17, 2025).

These principles apply equally to *pro se* parties, like Plaintiffs here. "Artificial intelligence has the potential to serve as an important tool to provide access to the courts for those who cannot afford counsel." *Ammann v. Markel Ins. Co.*, No. 1:25-cv-1465, 2026 U.S. Dist. LEXIS 164071, at *8 (N.D. Ohio July 16, 2026); *see also Nixon v. West*, 798 F. Supp.3d 770, 777 (N.D. Ohio Sept. 3, 2025) ("Artificial intelligence has the potential to help litigants like Plaintiff who do not have access to a lawyer. In this respect, this nascent tool may prove helpful in promoting access to justice"). But *pro se* parties have the same responsibilities as counsel to ensure that AI generated work product is accurately citing cases, statutes, ordinances, regulations and any other legal authority. *Nixon*, 798 F.Supp.3d at 777–78 (stating that "anyone who appears in Court, represented by counsel or not, is subject to Rule 11" and that "[r]elying on generative AI or citing authorities that do not, in fact, exist subjects a person to sanctions under Rule 11").

Because Plaintiffs are subject to Rule 11, the Court will not ban Plaintiffs' ability to use artificial intelligence in this case. The Court finds that Rule 11 is an appropriate safeguard against the misuse of AI. The Court recognizes that Plaintiffs' filings cite hallucinated case law[3] and a hallucinated Beachwood City Schools' policy. To be sure these hallucinated citations are Rule 11 violations, but the Court will not sanction Plaintiffs for this conduct at this time. In their Opposition, Plaintiffs acknowledged that they cited the hallucinated policy and "accept responsibility" for that mistake. (Doc. No. 35, PageID #415.) They further "recognize and accept their obligations under

[3] The Court has not wasted judicial resources verifying every single citation Plaintiffs rely on in this case. The Court has independently reviewed three of the citations Defendants brought to the Court's attention: "Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002)," "Roe v. Planned Parenthood, 2020-Ohio-4863, and "Farmer v. Cleveland City Schools, No. 1:18-cv-2012 (N.D. Ohio 2019)." *Roe* and *Farmer* do not exist at those citations. And while *Browning* exists at that citation, the quote Plaintiffs attribute to that decision was fabricated.

Federal Rule of Civil Procedure 11." (*Id.* at PageID #414.) And the Court recognizes that outside of the TRO Motion, Defendants have not asserted that Plaintiffs have cited to any hallucinated case law in any other paper filed with the Court. Given that the hallucinated case law is not relevant to the pending motions before the Court, and Plaintiffs have acknowledged their mistake concerning the hallucinated policy, the Court exercises its discretion to not impose sanctions in this instance, including banning their ability to use AI going forward.

**But the Court expressly warns Plaintiffs that the Court will not hesitate to enforce Rule 11 going forward**. Rule 11 provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). By signing papers filed with this Court, Plaintiffs are reminded that they are certifying that "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (1) [the paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). **Plaintiffs are expressly warned that failure to comply with these rules may result in sanctions pursuant to Fed. R. Civ. P. 11(c), including, but not limited to, monetary**

**sanctions and dismissal of this case.**[4] But for all these reasons, the Court denies the AI Motion.

### E. The Court grants the Second Motion for Leave, but finds the Counts II, III, IV and V of the proposed SAC fail to state a claim upon which relief could be granted against the Beachwood Defendants

Having disposed of the parties' non-dispositive motions, the Court next turns to the parties' motions concerning the briefing. As explained below the Court finds that the proposed SAC states a plausible claim for First Amendment retaliation. Accordingly, amendment would not be futile, and the Court grants Plaintiffs' motion for leave to file the SAC. The Court, however, finds that the remaining claims fail to state a claim upon which relief can be granted against the Beachwood Defendants. Because Pekarski has not opposed the Second Motion for Leave, all claims in the proposed SAC remain pending against him. And because the Court is granting the Second Motion for Leave, the Court denies the First Motion for Leave, the Motion to Dismiss, and the Motion for Judgment on the Pleadings as moot.

#### 1. Allegations in the SAC

##### i. The parties

"Plaintiff Lamar Boyd is an adult resident of Ohio and father/legal caretaker of the affected children." (SAC ¶ 12.) "Plaintiff Thais Antonio is an adult resident of Beachwood, Ohio and residential caretaker of the affected children." (*Id.* at ¶ 13.)

"Defendant Beachwood City School District Board of Education ("Board") is a political subdivision organized under Ohio law and responsible for District policies, customs, supervision, training, and practices." (*Id.* at ¶ 14.) "Defendant Robert Hardis was, at all relevant times,

[4] Contemporaneously with this Memorandum Opinion and Order, the Court is referring this matter to Magistrate Judge Armstrong for general pretrial supervision, including overseeing service, conducting a Case Management Conference, overseeing the discovery process, and resolving all non-dispositive motions. Nothing in this Order shall be construed as limiting Magistrate Judge Armstrong's ability to issue appropriate orders concerning Plaintiffs' use of AI, including but not limited to prohibiting their use of AI to the extent necessary.

Superintendent of Beachwood City School District and acted under color of state law." (*Id.* at ¶ 15.) "Defendant Ken Veon was, at all relevant times, Assistant Superintendent of Beachwood City School District and acted under color of state law." (*Id.* at ¶ 17.) "Defendant Grace Penyman was, at all relevant times, Registrar for Beachwood City School District and acted under color of state law." (*Id.* at ¶ 19.) "Defendant Officer Colton Pakarski was, at all relevant times, Head of Security and/or acting security official for Beachwood City School District and acted under color of state law." (*Id.* at ¶ 21.) "Defendant John/Jane Doe Receptionist was, at all relevant times, an employee and/or agent of the District whose identity is presently unknown." (*Id.* at ¶ 23.)

**ii. Plaintiffs' attempt to enroll children in Beachwood City Schools**

"On or about September 2, 2025, Plaintiff Antonio sought to enroll resident children into Beachwood City Schools using a notarized lease, notarized Powers of Attorney, residency documentation, and other enrollment materials." (*Id.* at ¶ 26.) "The children physically resided full-time with Plaintiff Antonio in Beachwood, Ohio." (*Id.* at ¶ 27.) "Under Ohio Revised Code § 3313.64, resident children are entitled to tuition-free attendance within the district where they reside." (*Id.* at ¶ 28.) "Defendant Perryman rejected and/or obstructed the enrollment based upon a purported requirement that Plaintiff Antonio be the children's biological mother." (*Id.* at ¶ 29.) "Defendant Perryman told Plaintiff Antonio words to the effect that she should only enroll her own biological son and worry about her own child." (*Id.* at ¶ 30.) Plaintiffs allege that "[n]o Ohio statute or District policy required Plaintiff Antonio to be the biological mother in order to present lawful residency and caretaker documentation." (*Id.* at ¶ 31.)

"Defendant Perryman's use of a biological-parent requirement imposed an unauthorized enrollment barrier and treated Plaintiffs differently based upon family status, ancestry-related

assumptions, caretaker status, and association with children with disabilities." (*Id.* at ¶ 32.) "Defendant Perryman directed Plaintiff Boyd to seek additional documentation through Probate Court and Juvenile Court proceedings." (*Id.* at ¶ 33.) "Probate Court and Juvenile Court personnel later confirmed that Plaintiffs' notarized POA documentation was already legally sufficient and that additional court intervention was unnecessary." (*Id.* at ¶ 34.)

"Defendant Perryman's directives caused Plaintiffs to pursue unnecessary court communications and created a bad-faith administrative obstacle rather than a meaningful enrollment process." (*Id.* at ¶ 35.) "Defendants' directives caused delay, confusion, unnecessary burden, and interruption of educational access." (*Id.* at ¶ 36.) "Defendant Perryman further informed Plaintiffs that if enrollment was not completed on September 2, 2025, Plaintiffs would have to wait until her return on September 12, 2025." (*Id.* at ¶ 37.) "From September 3 through September 11, 2025, Defendants failed to provide a designee or meaningful alternative enrollment process." (*Id.* at ¶ 38.) "Defendants thereby delayed access to enrollment despite possessing sufficient documentation to process the matter." (*Id.* at ¶ 39.)

"Defendants' conduct violated and/or departed from Board Policy 5111, which requires the District to provide tuition-free education to eligible resident students and meaningfully communicate enrollment requirements." (*Id.* at ¶ 40.) "Board Policy 5111 further prohibits exclusion of otherwise eligible children on the basis of ancestry or disability." (*Id.* at ¶ 41.) "Defendants' conduct violated and/or departed from Board Policy 2260 prohibiting discrimination based upon ancestry, family status, disability, and related protected classifications." (*Id.* at ¶ 42.) "Defendants' treatment of Plaintiff Antonio as an insufficient caretaker because she was not the biological mother exceeded residency-verification authority and converted verification into obstruction." (*Id.* at ¶ 43.)

**iii. Plaintiffs seek a writ of mandamus in state court**

"On September 4, 2025, Plaintiffs filed a Writ of Mandamus in the Cuyahoga County Court of Common Pleas, Case No. CV-25-124011, before Judge Ashley Kilbane." (*Id.* at ¶ 44.) "Plaintiffs filed the mandamus action because Defendants had failed to process enrollment despite receiving sufficient documentation." (*Id.* at ¶ 45.) "Around September 12, 2025, Judge Kilbane's chambers contacted the District regarding the enrollment issue." (*Id.* at ¶ 46.) Plaintiffs allege on information and belief, "the District represented that it was working to enroll the children." (*Id.* at ¶ 47.) "That representation was materially misleading because Defendants continued refusing to recognize Plaintiff Antonio's caretaker/residency documentation and failed to provide a meaningful enrollment process during Defendant Perryman's absence." (*Id.* at ¶ 48.) "The District's representation to the state court materially omitted the prior refusal to accept Plaintiff Antonio's documentation, the demand for unnecessary court documents, and the failure to provide an enrollment designee." (*Id.* at ¶ 49.)

**iv. Plaintiffs submit additional documentation to Beachwood Schools**

"On September 11, 2025, Plaintiff Antonio delivered an envelope containing IEP documentation, notarized affidavits, and POA records for enrollment review." (*Id.* at ¶ 50.) "District procedures required submission and review of IEP documentation for children receiving special education services." (*Id.* at ¶ 51.) "The IEP records were material to enrollment and to the District's obligations toward students with disabilities." (*Id.* at ¶ 52.) "On September 12, 2025, during a scheduled enrollment meeting, Defendant Perryman refused to preserve or meaningfully review the submitted records and stated words to the effect that she did not need those records." (*Id.* at ¶ 53.) Defendant Perryman's refusal to preserve and review the IEP and POA documentation materially interfered with enrollment processing and violated District procedures concerning students with

disabilities. (*Id.* at ¶ 54.) "Defendant Hardis later claimed ignorance concerning the IEP records despite those records having been physically delivered to District offices." (*Id.* at ¶ 55.) "Defendants' refusal to preserve and consider the submitted records supports a reasonable inference of deliberate obstruction, bad faith, and failure to preserve or meaningfully review material records of material evidence." (*Id.* at ¶ 56.) "Defendants' refusal to preserve and review the IEP records also undermines any later claim that Plaintiffs failed to provide required documentation." (*Id.* at ¶ 57.)

**v. Plaintiff Boyd visits the Beachwood Board**

"On September 15, 2025, after receiving no communication from Pupil Services despite prior assurances that follow-up contact would occur, Plaintiff Boyd contacted the Board office by telephone seeking urgent enrollment information. (*Id.* at ¶ 58.) "The receptionist stated that she did not know who was available in the office to assist Plaintiffs." (*Id.* at ¶ 59.) "Plaintiff Boyd informed the receptionist that he would come to the Board office in person to seek the enrollment information being withheld." (*Id.* at ¶ 60.) "Plaintiff Boyd then arrived at the public Board office for legitimate enrollment-related business." (*Id.* at ¶ 61.)

"Upon arrival, Plaintiff Boyd was immediately intercepted by Defendant Veon." (*Id.* at ¶ 62.) "Defendant Veon alleged that Plaintiff Boyd had been rude to the receptionist." (*Id.* at ¶ 63.) "Plaintiff Boyd requested a specific explanation concerning the alleged rude conduct." (*Id.* at ¶ 64.) "Defendant Veon refused to provide any meaningful explanation." (*Id.* at ¶ 65.) "Defendant Veon did not meaningfully inquire into Plaintiffs' enrollment concerns and instead escalated the interaction." (*Id.* at ¶ 66.)

"Defendant Veon continued disregarding Plaintiff Boyd's legitimate enrollment concerns and ignored Plaintiff Boyd's repeated attempts to understand why he was being ordered to leave a public

administrative office while his efforts to secure enrollment for resident children were not being fairly considered." (*Id.* at ¶ 67.) "Rather than engage in meaningful dialogue or address Plaintiffs' enrollment-related concerns, Defendant Veon remained dismissive, escalatory, obstructive, and retaliatory toward Plaintiffs' lawful enrollment-related business, despite Plaintiffs' peaceful attempts to resolve the ongoing enrollment dispute through proper administrative channels." (*Id.*) "Defendant Veon's conduct communicated that Plaintiffs' enrollment concerns would not be treated as legitimate public business and that Plaintiffs would be removed rather than heard." (*Id.* at ¶ 68.)

"Plaintiff Boyd exited the building peacefully without threats, violence, or disruption." (*Id.* at ¶ 69.) "Beachwood Police responded and investigated the incident." (*Id.* at ¶ 70.) "No arrest, citation, criminal charge, or trespass order resulted from the September 15 incident." (*Id.* at ¶ 71.) "No responding officer concluded that Plaintiff Boyd posed a safety threat on that date." (*Id.* at ¶ 72.) "Defendant Perryman did not report any alleged car blocking, threats, or safety concerns to responding officers on September 15, 2025." (*Id.* at ¶ 73.)

"The September 15 incident demonstrates that Defendants escalated a legitimate enrollment inquiry despite the absence of unlawful or threatening conduct." (*Id.* at ¶ 74.) "No video recording is alleged for the September 15 incident." (*Id.* at ¶ 75.) "The absence of any trespass order, citation, arrest, or safety finding on September 15 undermines Defendants' later attempt to characterize Plaintiffs as dangerous or disruptive." (*Id.* at ¶ 76.)

**vi. Plaintiffs return to the Board for a second time**

"On September 19, 2025, Plaintiffs Boyd and Antonio again appeared at the District office attempting to resolve the ongoing enrollment dispute." (*Id.* at ¶ 77.) "Video evidence exists concerning portions of the September 19, 2025 interaction." (*Id.* at ¶ 78.) "Plaintiffs entered the

office and greeted the receptionist peacefully." (*Id.* at ¶ 79.) "The receptionist directed Plaintiffs to communicate with Defendant Perryman through the lobby telephone." (*Id.* at ¶ 80.) "Video evidence shows that shortly after Plaintiffs' greeting, the receptionist texted or otherwise communicated or otherwise communicated with someone inside the secured office area." (*Id.* at ¶ 81.)

"Shortly thereafter, Defendant Veon emerged from the secured area and confronted Plaintiffs." (*Id.* at ¶ 82.) "The timing of Defendant Veon's appearance immediately following the receptionist's communication supports a reasonable inference of coordinated action directed toward Plaintiffs." (*Id.* at ¶ 83.) "Defendant Veon physically approached Plaintiffs and interfered with Plaintiffs' efforts to conduct enrollment-related business." (*Id.* at ¶ 84.) "Defendant Veon ignored repeated requests for space and escalated the interaction despite Plaintiffs' legitimate purpose for being present." (*Id.* at ¶ 85.) "Defendant Veon's conduct on September 19 mirrored the prior September 15 escalation: Plaintiffs attempted to conduct enrollment business, while Defendant Veon treated Plaintiffs' presence as a problem to be removed rather than a request requiring administrative review." (*Id.* at ¶ 86.)

"Plaintiffs resumed communication with Defendant Perryman concerning the District's refusal to recognize Plaintiff Antonio's caretaker and residency status." (*Id.* at ¶ 87.) "Plaintiff Antonio questioned why Plaintiff Boyd was instructed to complete additional enrollment procedures despite Plaintiff Antonio already having submitted applications and documentation for the resident children." (*Id.* at ¶ 88.) "Defendant Perryman persisted in refusing to recognize Plaintiff Antonio's standing as residential caretaker and asserted that Plaintiff Antonio had enrolled only her son." (*Id.* at ¶ 89.) "Plaintiffs retained copies of previously submitted enrollment applications and supporting documentation." (*Id.* at ¶ 90.) "During the communication, Plaintiff Antonio referenced Defendant

Perryman's prior comments concerning Plaintiff Antonio not being the biological mother and being told to worry about her own child." (*Id.* at ¶ 91.)

"Toward the conclusion of the communication, Defendant Perryman placed the phone down, a distinct click was heard, and silence followed." (*Id.* at ¶ 92.) "Plaintiffs reasonably believed the communication had ended." (*Id.* at ¶ 93.) "After reasonably believing the communication had ended, and while Plaintiffs were exiting the building, Plaintiff Antonio privately muttered the statement: you're a stupid bitch." (*Id.* at ¶ 94.) Plaintiffs allege that the statement was not "a threat," "fighting words," or "directed during an active confrontation," and "did not disrupt school operations." (*Id.* at ¶¶ 95–98.) Plaintiffs allege that "[t]he statement constituted protected speech under the First Amendment." (*Id.* at ¶ 99.)

**vii. Defendants issue a two-year "trespass ban"**

"Defendants later inflated this isolated private mutter into a threat narrative despite the absence of violence, physical intimidation, operational disruption, or police action based on the video. Dispute." (*Id.* at ¶ 100.) "On or about September 22, 2025, Defendant Hardis initiated, directed, and/or caused the creation of a police incident report." (*Id.* at ¶ 101.) "The report contained assertions presented as firsthand or direct knowledge concerning alleged threats and safety concerns." (*Id.* at ¶ 102.) "Defendant Hardis did not personally witness the material events underlying those allegations." (*Id.* at ¶ 103.) "Defendant P[e]karski acknowledged within the report that he was out of town during the relevant incident." (*Id.* at ¶ 104.) "Despite lacking firsthand knowledge, Defendant P[e]karski authorized and/or issued a two-year trespass ban against Plaintiffs." (*Id.* at ¶ 105.)

"Policy 5020 limits exclusion from school property to up to one school year." (*Id.* at ¶ 106.) "Defendants nonetheless imposed a two-year ban." (*Id.* at ¶ 107.) "The two-year ban exceeded the

authority granted under District policy and was arbitrary, excessive, and retaliatory." (*Id.* at ¶ 108.)

"On September 22, 2025, Defendant Hardis emailed Plaintiffs confirming that the children were enrolled while simultaneously informing Plaintiffs that they had been trespassed." (*Id.* at ¶ 109.) "Defendant P[e]karski separately emailed Plaintiff Boyd confirming the trespass determination." (*Id.* at ¶ 110.) "Beachwood officers then traveled outside Beachwood jurisdiction into South Euclid to hand-deliver the trespass notice at Plaintiffs' residence." (*Id.* at ¶ 111.) Plaintiffs alleged upon information and belief that "no mutual-aid emergency or independent law-enforcement necessity justified the extraterritorial delivery." (*Id.* at ¶ 112.) "The South Euclid delivery constituted an intimidating law-enforcement-backed enforcement action arising from a school enrollment dispute and was used to chill Plaintiffs' protected activity." (*Id.* at ¶ 113.)

"Defendants used a purported safety rationale as a pretext to punish Plaintiffs for challenging unlawful enrollment practices and pursuing legal relief." (*Id.* at ¶ 114.) "The timing of the trespass ban, issued after Plaintiffs challenged enrollment obstruction and after the state mandamus action, supports a reasonable inference of retaliatory motive." (*Id.* at ¶ 115.) "The fact that the children were confirmed enrolled at the same time Plaintiffs were trespassed supports a reasonable inference that the ban was not necessary to process enrollment but was instead used to punish and deter Plaintiffs." (*Id.* at ¶ 116.)

**viii. Plaintiffs file second case in state court**

"Plaintiffs later sought relief before Judge Maureen Clancy in Cuyahoga County Court of Common Pleas Case No. CV-25-125285." (*Id.* at ¶ 117.) "On October 27, 2025, mediation occurred before Court Mediator Kenneth R. Callahan." (*Id.* at ¶ 118.) "During mediation, District counsel and representatives acknowledged that the children were eligible for enrollment because of their

IEPs." (*Id.* at ¶ 119.) "District representatives were placed on actual notice of Plaintiffs' position, supporting records, and video evidence concerning the September 19 incident." (*Id.* at ¶ 120.)

"Following review of the video evidence, District representatives discussed rescinding the trespass ban during settlement discussions." (*Id.* at ¶ 121.) "Plaintiffs allege that Defendants' willingness to consider rescission after reviewing the video evidence undermines the asserted immediacy and severity of the safety rationale." (*Id.* at ¶ 122.) **"**Despite actual notice that the asserted safety narrative was disputed and unsupported by the video evidence, Defendants continued relying upon the same allegations in later litigation." (*Id.* at ¶ 123.)

"Plaintiffs presented a pre-suit proposal seeking correction of false or unsupported records and resolution of the trespass issue." (*Id.* at ¶ 124.) "Defendants did not retract the disputed allegations, correct the records, or rescind the unlawful two-year ban." (*Id.* at ¶ 125.) "Plaintiffs dismissed their state action without prejudice and transitioned to federal court after Defendants failed to provide complete redress, correct the disputed records, or provide compensation for Plaintiffs' direct constitutional injuries." (*Id.* at ¶ 126.)

"Defendants Hardis and Perryman later submitted sworn statements repeating or relying upon allegations Plaintiffs contend were false, exaggerated, unsupported, and/or materially misleading." (*Id.* at ¶ 127.) "Those allegations included claims concerning threats and alleged vehicle obstruction." (*Id.* at ¶ 128.) "Board Policy 3210 prohibits ethical obligations concerning truthful and accurate reporting and requires ethical conduct by District personnel." (*Id.* at ¶ 129.) "Defendants' continued reliance upon unsupported allegations after notice supports a reasonable inference of retaliation, bad faith, materially false or unsupported official accusations, and deprivation of due process." (*Id.* at ¶ 130.)

**ix. Plaintiffs allege that Defendants rely upon false, unsupported and materially disputed statements in this litigation**

"Defendants later submitted sworn affidavits and declarations in federal litigation containing allegations Plaintiffs contend were materially false, exaggerated, misleading, unsupported by contemporaneous evidence, and contradicted by objective evidence and video recordings." (*Id.* at ¶ 131.) "Defendant Hardis represented under oath that he personally observed Plaintiff Boyd behaving in a hostile and belligerent manner." (*Id.* at ¶ 132)

"Plaintiffs deny that Plaintiff Boyd engaged in threatening or violent conduct during the September 19, 2025 interaction." (*Id.* at ¶ 133.) "Objective video evidence materially contradicts Defendants' characterization of Plaintiffs as aggressive, dangerous, or threatening." (*Id.* at ¶ 134.) "The September 19 video recording shows no physical threats, intimidation, or yelling by Plaintiff Boyd." (*Id.* at ¶ 135.) "The recording instead shows Plaintiffs entering peacefully, attempting to conduct enrollment-related business, and being interrupted after the receptionist texted or otherwise communicated with Defendant Veon." (*Id.* at ¶ 136.)

"Defendants nevertheless characterized Plaintiffs as dangerous individuals in order to justify retaliatory exclusion from public property." (*Id.* at ¶ 137.) "Defendants additionally alleged that Plaintiff Boyd physically blocked Defendant Perryman's vehicle and caused her to fear for her safety." (*Id.* at ¶ 138.) "Plaintiffs deny that Plaintiff Boyd unlawfully blocked Defendant Perryman's vehicle or engaged in threatening conduct toward her." (*Id.* at ¶ 139.)

Plaintiffs alleges upon information and belief that "no contemporaneous police report, criminal complaint, emergency incident report, witness statement, or emergency response was generated concerning the alleged vehicle-blocking incident." (*Id.* at ¶ 140.) "No criminal charge was ever filed against Plaintiff Boyd regarding the alleged vehicle-blocking incident." (*Id.* at ¶ 141.)

"Defendants further alleged that Plaintiff Boyd refused to leave District property and required police escort from the premises." (*Id.* at ¶ 142.) "Plaintiffs state that Plaintiff Boyd exited peacefully without threats, violence, or criminal conduct." (*Id.* at ¶ 143.) "Responding officers did not impose an immediate trespass order and did not conclude that Plaintiff Boyd presented a safety threat on September 15, 2025." (*Id.* at ¶ 144.)

"Defendants also alleged that Plaintiff Boyd repeatedly called the office in a manner requiring phone systems to be diverted to voicemail." (*Id.* at ¶ 145.) "Plaintiffs state that repeated communications occurred because Defendants continuously withheld enrollment information and failed to provide meaningful responses concerning resident children entitled to attend school." (*Id.* at ¶ 146.)

"Defendants' sworn statements omitted material context concerning the District's refusal to recognize Plaintiff Antonio's caretaker and residency documentation." (*Id.* at ¶ 147.) "Defendants' sworn statements further omitted that Plaintiffs had already supplied notarized POAs, residency documentation, IEP materials, and enrollment applications before the challenged incidents occurred." (*Id.* at ¶ 148.)

"Defendants' sworn statements also omitted that Probate Court and Juvenile Court personnel informed Plaintiffs that the additional court process Defendants demanded was unnecessary." (*Id.* at ¶ 149.) "Defendants' sworn statements further omitted that the children were ultimately deemed eligible for enrollment." (*Id.* at ¶ 150.) "Defendants were therefore on actual notice that material portions of the asserted safety threat narrative were disputed and contradicted by Plaintiffs' evidence." (*Id.* at ¶ 151.)

"Despite actual notice of these disputes and contradictions, Defendants continued relying

upon the same allegations in sworn federal filings." (*Id.* at ¶ 152.) "Defendants knowingly, recklessly, or with deliberate indifference relied upon materially disputed and unsupported allegations in order to justify the challenged two-year trespass ban, retaliate against Plaintiffs for protected activity, and perpetuate exclusion from public property." (*Id.* at ¶ 153.) "Defendants imposed and maintained the exclusion without conducting a meaningful neutral investigation, without interviewing Plaintiffs before enforcement, without meaningfully reviewing available contradictory evidence before imposing the restriction, and without providing a neutral process capable of testing the reliability of the allegations relied upon by Defendants." (*Id.* at ¶ 153A.) "Plaintiffs further allege the continued maintenance and reliance upon official records characterizing Plaintiffs as threatening, disruptive, or unsafe continues to impose reputational stigma, practical burdens, emotional distress, and chilling effects upon Plaintiffs' protected advocacy and participation in school-related matters." (*Id.* at ¶ 153B.)

**x. Plaintiffs allege that the Defendants violated several Board Policies**

"Board Policy 5111 requires the District to provide tuition-free education to eligible resident students and to meaningfully communicate enrollment requirements." (*Id.* at ¶ 154.) "Defendants violated or departed from Policy 5111 by rejecting valid residency and POA documentation, requiring unnecessary court involvement, failing to provide an enrollment designee, and delaying enrollment." (*Id.* at ¶ 155.) "Board Policy 2260 prohibits discrimination based on ancestry, disability, and related protected classifications." (*Id.* at ¶ 156.) "Defendants violated or departed from Policy 2260 by imposing a biological-parent requirement not required by law or policy." (*Id.* at ¶ 157.) "Board Policy 3210 requires ethical conduct and prohibits ethical obligations concerning truthful and accurate reporting." (*Id.* at ¶ 158.) "Defendants violated or departed from Policy 3210 by relying on

false or unsupported allegations after being placed on notice of contrary evidence." (*Id.* at ¶ 159.) "Board Policy 5020 limits exclusion from school property to up to one school year." (*Id.* at ¶ 160.) "Defendants violated Policy 5020 by issuing a two-year trespass ban." (*Id.* at ¶ 161.)

"These policy departures are not merely technical violations." (*Id.* at ¶ 162.) "They demonstrate arbitrary, retaliatory, and discriminatory conduct under color of state law." (*Id.*)

**2. Standard of review**

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002)).

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556

U.S. at 679.

**3. The proposed SAC is not futile because Count I of the Second Amended Complaint states a claim upon which relief could be granted.**

The proposed SAC raises five causes of action: (1) First Amendment retaliation (Count I), (2) Fourteenth Amendment Due Process (Count II), (3) Equal Protection (Count III), (4) Reliance Upon Materially False or Unsupported Official Accusations / Deprivation of Due Process (Count IV), and (V) *Monell* Liability / Failure to Supervise / Ratification (Count V). Upon review of the proposed SAC, the Court finds that Plaintiffs' First Amendment retaliation claim states a claim upon which relief can be granted. As explained below, the remaining counts, however, do not. Accordingly, the Court grants Plaintiffs leave to file the SAC, but finds that Counts II, III, IV and V fail to state a claim and, therefore, are dismissed with prejudice.

**i. Plaintiff's First Amendment retaliation claim states a plausible claim**

In their Opposition, the Beachwood Defendants argue that "Boyd and Antonio's retaliation claim fails at the outset because obscenities and verbal abuse are not protected activity." (Doc. No. 32, PageID #385.) According to the Beachwood Defendants, "Plaintiffs admit they called the Registrar a stupid bitch" and that "[t]he right to free speech does not protect vulgarities or abusive, demeaning language, particularly in the school context." (*Id.*) The Beachwood Defendants then argue that "[e]ven if Plaintiffs pled any other protected speech – they do not – their proposed retaliation claim would still fail for lack of operative facts showing a causal connection between that speech and any alleged adverse action." (*Id.*) They argue that "[t]he police report Plaintiffs challenge in Paragraphs 101 and 102 of their Proposed SAC explicitly notes that the Trespass Notice was issued because Plaintiffs: (1) called the Registrar a stupid bitch on multiple occasions; (2) behaved in a belligerent manner; and (3) refused to leave the building when asked to do so." (*Id.* at PageID #385–

86.) The Beachwood Defendants assert that Plaintiffs "do not tender any factual allegations showing that they were restricted from school property for some other reason." (*Id.* at PageID #386.)

Plaintiffs argue in their Reply that "Defendants reduce Plaintiffs' retaliation claim to one alleged statement," which "mischaracterizes the proposed SAC." (Doc. No. 34, PageID #403.) Plaintiffs assert that they "allege protected activity including enrollment advocacy, communications with public officials, filing legal actions, challenging District conduct, requesting correction of records and seeking governmental redress." (*Id.*) They further assert that they "allege that adverse actions followed these protected activities, including the challenged two-year restriction, reliance upon disputed allegations, and continued enforcement after objections." (*Id.*) Plaintiffs then argue that "[w]hether Plaintiffs can ultimately prove causation is a factual issue. It should not be resolved against Plaintiffs at the amendment stage." (*Id.*)

The Sixth Circuit has held that a First Amendment retaliation claim has the following three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *see also Hardrick v. Huss*, 155 F.4th 518, 525-526 (6th Cir. 2025); *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018). The Beachwood Defendants only challenge the first and third elements.

Staring with the first element, the Court agrees with Plaintiffs that their First Amendment retaliation claim is not limited to the "stupid bitch" comment. Plaintiffs certainly allege that the "stupid bitch" comment "constituted protected speech under the First Amendment." (SAC 94–99.)

But they also allege that they "engaged in protected activating including filing mandamus actions, communicating with public officials, challenging unlawful enrollment practices, criticizing District conduct, requesting correcting of records, and seeking redress." (SAC 164.) Plaintiffs further allege that "Plaintiffs allege generally in the SAC that 'Plaintiffs' protected activity included both formal legal filings and informal petitioning activity direct to public officials responsible for school enrollment.'" (SAC 165.) Even assuming the "stupid bitch" comment is obscene, and thus not protected by the First Amendment, as the Beachwood Defendants claim, the Beachwood Defendants have not challenged the other conduct Plaintiffs allege to be protected speech. The Court therefore finds that the SAC alleges that Plaintiff plausibly engaged in protected conduct.

Regarding the third element (i.e., causation), a plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, and (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus—X*, 175 F.3d at 386; *see also King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012); *Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 646 (6th Cir. 2015). "The true object of this inquiry is to determine whether the plaintiff has been retaliated against as a direct result of his or her protected speech." *Paterek*, 801 F.3d at 646.

Here, Plaintiffs allege that "Defendants retaliated against Plaintiffs by obstructing enrollment, manufacturing confrontations, relying on unsupported allegations, issuing a challenged trespass ban, and using police/security authority to intimidate Plaintiffs." (SAC 166.) They further allege that "Defendants used a purported safety rational as pretext to punish Plaintiffs for challenging unlawful enrollment practices and pursuing legal relief." (SAC 114.) Plaintiffs go on to allege that "[t]he timing of the trespass ban, issued after Plaintiffs challenged enrollment obstruction and after the state

mandamus action, supports a reasonable inference of retaliatory motive." (SAC 115.) Construing Plaintiffs' *pro se* allegations in the light most favorable, the Court finds that the SAC plausibly alleges that plaintiffs have "been retaliated against as a direct result of [their] protected speech." *Paterek*, 801 F.3d at 646.

But the Court's analysis is not over. The Beachwood Defendants argue that they are entitled to qualified immunity. They argue that none of the facts alleged against the individual defendants "are constitutional violations." (Doc. No. 32, PageID #393.) The Beachwood Defendants argue that "Plaintiffs may be disappointed or even frustrated with the District's enrollment process and the subsequent restrictions on their access to school property, but the United States Constitution does not entitle Boyd and Antonio to pleasant and satisfactory interactions with all governmental officials." (*Id.*) They finally assert that "upsetting exchanges with public entities do not create constitutional causes of action, and Plaintiffs' Proposed SAC does not allege violations of any rights – much less clearly-established ones against each Individual Defendant." (*Id.* at PageID #393–94.)

Plaintiffs respond in their Reply that "Defendants assert qualified immunity and argue that no clearly established rights were violated." (Doc. No. 34, PageID #404.) They then assert that "Plaintiffs allege retaliation for protected advocacy, procedural deficiencies surrounding a severe restriction, continued reliance on disputed allegations, and the absence of meaningful review." (*Id.*) Plaintiffs conclude that "[b]ecause Defendants' immunity argument depends substantially on accepting Defendants' factual characterization of disputed events, qualified immunity should not defeat amendment at this stage." (*Id.*)

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless 'the official violated a statutory or constitutional

right,' and 'the right was "clearly established" at the time of the challenged conduct.'" *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In evaluating qualified immunity at the pleading stage, the Court must determine whether the complaint plausibly alleges facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. *See Siefert v. Hamilton Cnty*., 951 F.3d 753, 762 (6th Cir. 2020); *see also Saalim v. Walmart*, 97 F.4th 995, 1003 (6th Cir. 2024); *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 761 (6th Cir. 2024). "If, taking all the facts as true and reading all inferences in the plaintiff's favor, the plaintiff has not plausibly show[n] a violation of his clearly established rights, then the [official] is entitled to immunity from suit." *Id*.; *see also Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021).

For a law to be "clearly established," it must be so clear at the time of the incident that every reasonable official would understand the unlawfulness of his conduct. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). In evaluating whether a constitutional right was clearly established for purposes of qualified immunity, courts "must examine the particular situation that [the official] confronted and ask whether the law clearly established that [his] conduct was unlawful." *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). In reading a complaint in the light most favorable to the plaintiff, it need only be "plausible" that an official's acts violated the plaintiff's clearly established constitutional right. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Regarding the first step in the qualified immunity analysis, Defendants assert (summarily and without much explanation) that "[n]one of [the] alleged acts [of the individual defendants] are constitutional violations." (Doc. No. 32, PageID #394.) But, as explained above, the Court has found that Plaintiffs have alleged a plausible First Amendment retaliation claim.

Under the second step of the qualified immunity analysis, the Court must determine whether the Complaint plausibly alleges facts showing that Plaintiff's constitutional rights under the First Amendment were clearly established at the time of the violation. Defendants offer no real argument on this prong other than asserting (in a conclusory manner) that "Plaintiffs' Proposed SAC does not allege violations of any rights – much less clearly-established ones against each Individual Defendant." (Doc. No. 32, PageID #394.) It is well established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (same). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson*, 125 F.3d at 995. Here, the Court finds that, by failing to provide any meaningful discussion of this issue, or citation to legal authority, the Beachwood Defendants have waived their argument that Plaintiffs failed to allege that they violated a clearly established right.

The Court therefore finds that qualified immunity does not mandate dismissal at this stage. The Beachwood Defendants are free to raise this issue again with the Court in a summary judgment motion. Accordingly, the Court finds that the Plaintiffs' First Amendment retaliation claim is not futile.

**ii. Plaintiffs' Fourteenth Amendment Due Process claim (Count II) fails to state a claim**

In their Opposition, the Beachwood Defendants argue that Plaintiffs' due process claim fails because (1) they "have no constitutional right to unfettered access to school grounds; thus, no process was due to them," (2) "claims that an entity failed to follow its own internal policies do not – as a matter of law – state a constitutional violation," and (3) "nothing that Plaintiffs allege amounts to

conscience-shocking governmental conduct." (Doc. No. 32, PageID #386–88.) The Beachwood Defendants point out that "Plaintiffs do not, for example, allege that they were barred from attending particular school meetings, conferences, or events, thus affecting their ability to parent or participate in educational decisions." (*Id.* at PageID #387.) They further point out that "[n]or could they assert such a claim, given that the Trespass Notice itself explicitly allows them access to educational meetings and any other time with written preapproval." (*Id.*) Finally, the Beachwood Defendants assert that "Policy 5020 has been entirely hallucinated by Plaintiffs' AI chatbot" and even if it were a real policy "its alleged violation does not present a viable Fourteenth Amendment claim." (*Id.* at PageID #388.)

In their Reply, Plaintiffs acknowledge that "Policy 5020" does not exist and assert that they "did not intend to assert a nonexistent policy as an independent source of federal rights." (Doc. No. 34, PageID #402.) Plaintiffs assert that they "intended to reference the District policies governing visitor access, security authority, procedural fairness, administrative responsibilities, [non-discrimination], and civil-rights-related safeguards."[5] (*Id.*) They argue that "Plaintiffs do not allege that District policy alone creates federal constitutional rights" and instead argue that "Plaintiffs alleged that Defendants exercised authority arbitrarily and disproportionality by imposing and maintaining a severe two-year restriction based on disputed allegations, without meaningful neutral review, meaningful opportunity to challenge the restriction, or objective evaluation of contrary evidence." (*Id.*) Plaintiffs also acknowledge that they do have an unrestricted right to access school property and instead argue that "the challenged restriction imposed substantial burdens through a broad two-year exclusion, a preapproval barrier, continued reliance on disputed allegations, and lack

[5] Plaintiffs attach copies of these policies to their Reply.

of meaningful review." (*Id.* at PageID #403.) According to Plaintiffs, "[t]he issue is whether Defendants allegedly exercised [their authority under their own policies] in a constitutionally arbitrary, retaliatory, and procedurally deficient manner." (*Id.*)

It is unclear whether Count II is alleging a substantive due process claim or a procedural due process claim. Regardless, the Court finds that Plaintiffs have failed to state a claim under either theory.

The Court first starts with substantive due process. "Generally, a plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006). Substantive due process "protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249 50 (6th Cir. 2003)). Without a protected interest, a substantive due process claim generally fails. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) ("Because EJS had no protectable interest, its substantive due-process claim must fail").[6]

Plaintiffs allege in the SAC that they "possessed protected liberty and property interests in fair governmental procedures, access to public property, freedom from arbitrary governmental exclusion, and reputation integrity when coupled with tangible governmental burdens." (SAC 171.) Defendants allegedly deprived Plaintiffs of that interest when they imposed and enforced the "two-

[6] Plaintiffs allege, in a conclusory fashion, that "Defendants' conduct was . . . conscience-shocking . . ." (SAC 174.) Such a conclusory allegation is insufficient under *Twombly* and *Iqbal* to sustain a substantive due process claim based upon government actions that "shock the conscience"

year trespass ban based upon unsupported allegations and materially disputed facts." (SAC 172.) Put simply, these allegations are insufficient to sustain a substantive due process claim because they do not establish that Defendants deprived Plaintiffs of any rights protected by substantive due process.

First, Plaintiffs do not have a protected interest in "access to public property" and "freedom from arbitrary governmental exclusion" because courts do not recognize a right to unfettered access to public schools. *Guy v. Bd. of Educ. Rock Hill Local Sch. Dist.*, No. 1:18-cv-893, 2020 U.S. Dist. LEXIS 94778, at *13 (S.D. Ohio May 31, 2020) ("Plaintiff has not directed the Court to any authority, in this jurisdiction or elsewhere, that establishes she has a liberty interest in attending school functions or being on school property"); *see also Gray v. Winton Woods City Sch.*, No. 1:23-cv-553, 2024 U.S. Dist. LEXIS 101752, at *13 (S.D. Ohio June 7, 2024) ("[e]very court that has considered the issue has concluded that citizens, including parents do not have a liberty or property interest in accessing school property.") (quoting *Johnson v. Know Cnty.*, No. 3:19-cv-179, 2022 U.S. Dist. LEXIS 54166 (E.D. Tenn. Mar. 25, 2022); *accord Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744 (9th Cir. 2025) ("Hartzell was banned from accessing school property. This does not implicate Hartzell's right to direct her children's education"); *Jakson v. McCurry*, 762 F. App'x 919, 929 (11th Cir. 2019) ("And the few decisions of our sister circuits reviewing claims similar to Jackson's have uniformly concluded that there is no clearly established right for parents to access school property to exercise their rights under the First Amendment"); *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) ("we cannot conclude that a parent has a general and unlimited First Amendment right of access to school property"); *Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (holding that a parent's "assertions that school administrators must provide him with boundless access to school property are 'obviously without merit'"). Plaintiffs' have not pointed the Court to any contrary authority.

Plaintiffs' interest in "fair governmental procedures" implicates a *procedural* due process claim, and not a *substantive* due process claim. As explained by the Sixth Circuit, "[p]rocedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *EJS*, 698 F.3d at 855 (quoting *Collins v. City of Harker Heighst*, 503 U.S. 115, 125 (1992)). Simply put, Plaintiffs have not pointed the Court to any authority that there is a general right to "fair government procedures" that is protected by substantive due process.

Plaintiffs' "reputation integrity" is, however, protected by substantive due process. As explained by the Sixth Circuit, "[a] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Brown v. City of Niota*, 214 F.3d 718, 722 (6th Cir 2000) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). But Plaintiffs have not provided any factual allegations as to how Defendants deprived them of their interest in their reputation. A sole legal conclusion that Defendants deprived Plaintiffs of their reputation is insufficient under *Twombly* and *Iqbal*.

For these same reasons, Plaintiffs cannot sustain a procedural due process claim. "To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *EJS*, 698 F.3d at 855 (quoting *Women's Med. Prof's Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). As with a substantive due process claim, other than their liberty interest in their reputation, Plaintiffs have not alleged that they have "a life, liberty, or

property interest protected by the Due Process Clause." And even though reputation is a protected liberty interest, they have not sufficiently alleged how Defendants deprived them of that protected interest.

For all these reasons, Count II of the SAC fails to state a claim upon which relief could be granted.

**iii. Plaintiffs Equal Protection fails to state a claim**

The Beachwood Defendants argue that "Plaintiffs do not assert they are part of a suspect class and, therefore, can only proceed under the 'class of one' theory." (Doc. No. 32, PageID #389.) The Beachwood Defendants argue that Plaintiffs cannot maintain a "class of one" theory because "[t]hey do not identify any comparators at all, nor do they describe how those theoretical comparators are similarly-situated to them in all material respects." (*Id.* at PageID #390.) The Beachwood Defendants further argue that "Plaintiffs also do not allege any facts overcoming the presumption of rationality applicable to Ohio's residency laws." (*Id.*) Plaintiffs do not specifically respond to these arguments in their Reply.[7]

"The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010); *see also Speed Way Transportation, LLC v. City of Gahanna Ohio*, No. 21-3657, 2023 U.S. App. LEXIS 5135, at *10 (6th Cir. Mar. 1, 2023) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly

[7] Plaintiffs appear to concede these arguments because one of their headings in their Reply is entitled "Equal Protection or other count-specific issues do not justify wholesale denial of amendment." (Doc. No. 34, PageID #404.)

situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). In this case, Plaintiffs' Equal Protection claim is based upon the third category. (SAC 177 ("Defendants treated Plaintiffs differently from similarly situated resident parents, caretakers, and enrollment applicants").)

To plead an equal protection claim under a "class of one" theory, a plaintiff must "allege[] that: (1) he or she has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment." *U.S. v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (internal quotation marks omitted). With respect to the first element, a plaintiff "must allege that it and other individuals who were treated differently were similarly situated in all material respects." *Bojicic v. DeWine*, 569 F. Supp.3d 669, 688 (N.D. Ohio 2021) (citing *Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018)) (internal quotation marks omitted); *see also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (requiring plaintiffs to plead that comparator "was similarly situated in all relevant respects").

Here, aside from the wholly conclusory allegation that "Defendants treated Plaintiffs differently from similarly situated resident parents, caretakers and enrollment applicants," Plaintiffs provide no allegations, explanations, or factual basis for this Court to plausibly reach that conclusion. Without any facts to support this legal conclusion, Plaintiffs cannot sustain a "class of one theory." Moreover, by failing to oppose Defendants' arguments concerning Plaintiffs' Equal Protection claim, Plaintiffs have waived any opposition thereto. *DG Gas, LLC v. TA Franchise Sys*. LLC, No. 1:24-cv-01002-PAB, 2025 U.S. Dist. LEXIS 47159, at *81 (N.D. Ohio Mar. 14, 2025) (Barker, J.); *Adam v. Nakhle*, No. 1:22CV2183, 2023 U.S. Dist. LEXIS 206028, at *70–71 at *23 (N.D. Ohio Nov. 17, 2023) (Barker, J.); *Coles v. Johnny Appleseed Broad. Co.*, 479 F. Supp.3d 585, 603 (N.D. Ohio 2020)

(Barker, J.). For all these reasons, the SAC fails to state a plausible Equal Protection claim.

**iv. Plaintiffs' "Reliance Upon Materially False or Unsupported Official Accusations/Deprivation of Due Process" claim fails to state a claim**

The Beachwood Defendants next argue that Count IV fails because "[t]here is no Section 1983 federal cause of action arising from reliance upon materially false or unsupported official accusations." (Doc. No. 32, PageID #390.) According to the Beachwood Defendants, "Boyd and Antonio allege that the District's Trespass Notice and litigation filings are based on false allegations, mischaracterizations, and various material omissions thereby exposing the School District Defendants to liability." (*Id.* at PageID #391.) They argue that "as a matter of law, these allegations do not state a constitutional violation recognized in this Circuit," and that "statements made during legal proceedings are protected by the litigation privilege and cannot create an entitlement to relief as a matter of law." (*Id.*)

In their Reply, Plaintiffs argue that they "do not assert that disputed statements alone establish liability." (Doc. No. 34, PageID #403.) According to Plaintiffs, they "allege that disputed and unsupported accusations were used to impose and maintain substantial restrictions affecting Plaintiffs' liberty interests, reputational interests, parental participation, and access to public property." (*Id.*) Plaintiffs assert that "[t]he constitutional injury alleged is the deprivation imposed through disputed allegations and deficient procedures, not merely the existence of disputed statements." (*Id.*)

In Count IV, Plaintiffs allege that (1) "Defendants used the disputed and unsupported allegations to justify a two-year trespass ban, damage Plaintiffs' reputations, interfere with Plaintiffs' liberty interests, restrict Plaintiffs' access to public property, and defend against Plaintiffs'

constitutional claims," and (2) "Defendants knowingly, recklessly, maliciously, and/or with deliberate indifference deprived Plaintiffs' of fair governmental procedures guaranteed by the Fourteenth Amendment." (SAC 197-198.) In other words, Count IV is based upon Defendants allegedly using "disputed and unsupported" accusations when instituting the trespass ban and in defending against Plaintiffs' claims in court.

It is unclear whether Court IV of the SAC (entitled "Reliance Upon Materially False or Unsupported Accusations / Deprivation of Due Process") raises a procedural due process claim or substantive due process claim. Regardless of the theory, Plaintiffs' claim fails because they have not alleged an interest protected by the due process clause. *EJS*, 698 F.3d at 855. Just like Plaintiffs' other due process claim, other than reputation, Plaintiffs have not alleged a liberty interest protected by the due process clause. With respect to reputation, Plaintiffs have not alleged how Defendants deprived them of that protected interest. For all these reasons, Count IV fails to state a claim.

**v. Count V fails to state a claim**

The Beachwood Defendants argue that Plaintiffs "do not allege operative facts showing any constitutional violation" and accordingly "as a matter of law, there is no *Monell* claim on the facts alleged." (Doc. No. 32, PageID #392.) They further argue that "Plaintiffs do not identify any District policies permitting the harm they allege, nor do they plead any previous similar incidents the District failed to address." (*Id.*) The Beachwood Defendants point out that "Plaintiffs expressly claim that Policy 5020 – which does not exist and was apparently created out of whole cloth by their AI assistant – prohibited the Trespass Notice at issue." (*Id.*)

In their Reply, Plaintiffs argue that "do not rely primarily on a widespread-custom or failure-to-train theory." (Doc. No. 34, PageID #404.) Instead, Plaintiffs assert that they "principally rely

upon alleged direct action and/or ratification by an official allegedly exercising final decision-making authority rather than solely upon a pattern-of-practice theory." (*Id.*) According to Plaintiffs, "[t]he proposed SAC alleges Defendants Hardis exercised final decision-making authority regarding visitor restrictions and administrative enforcement." (*Id.*) Plaintiffs further assert that they "allege District officials and Board-level entities received notice of Plaintiffs' objections, preservation requests, disputed factual contentions, and contrary evidence." (*Id.*)

A municipality is not liable for injuries inflicted solely by its employees or agents under § 1983. *See*, *e.g.*, *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015). Rather, "[m]unicipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Sixth Circuit law recognizes four theories of *Monell* liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence [to] federal rights violations." *See*, *e.g.*, *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Here, Plaintiffs' *Monell* claim, as alleged, covers all four theories. (SAC 200 ("Defendant Board is liable under 42 U.S.C. § 1983 because the constitutional violations described herein were caused by official customs, policies, practices, ratification, failure to supervise, failure to train, and deliberate indifference"). As explained below, each theory fails.

**a. Illegal policy**

To state a claim under the "official policy" theory of liability, "a plaintiff must '(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Osberry v. Slusher*, 750 F. App'x 385, 398 (6th Cir. 2018) (quoting *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)). Plaintiffs here, however, have failed to identify an applicable municipal policy or custom. Plaintiffs allege that "Defendant Board permitted Defendant Hardis to impose a two-year trespass ban despite Board Policy 5020 expressly limiting exclusion from school property to up to one school year." (SAC 202). But as Plaintiffs concede in their Reply, "Policy 5020" does not exist. Accordingly, Plaintiffs' official policy theory fails. *See Gonzalez v. Kovacs*, 687 F.App'x 466, 470 (6th Cir. 2017) (affirming dismissal of *Monell* claim when the plaintiff did not allege "a single fact that suggests, plausibly or otherwise that [plaintiff's] misconduct was the result of a custom, policy, or practice of Lorain County"); *Crandall v. Newaygo Cnty.*, No. 1:22 cv-1193, 2023 U.S. LEXIS 104374, at *12 (W.D. Mich. June 15, 2023) (dismissing *Monell* claim, when the plaintiff did not allege "either an officially enumerated policy or legislative enactment of" the defendant).

**b. Ratification**

Under the "ratification" theory, a plaintiff must sufficiently allege that "the ratification was carried out by an official with final decision-making authority." *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (citing *D'Ambrosio*, 747 F.3d at 386 ("To properly allege a municipal liability

claim, a plaintiff must adequately allege . . . that an official with final decision making authority ratified illegal actions").[8] This theory "requires affirmative approval of a particular decision made by a subordinate." *Felicano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993).

Plaintiffs allege "Defendant Hardis functioned as final policymaking authority concerning visitor restrictions and administrative enforcement." (SAC 201.) Plaintiffs, however, do not allege what decision Defendant Hardis ratified. Instead, Plaintiffs allege that "*Defendant Board* ratified the unlawful conduct by permitting the retaliatory trespass ban, disputed allegations, and exclusionary actions to remain in effect despite actual notice of Plaintiffs' objections and supporting evidence." (SAC 206.) And when construing the SAC in Plaintiffs' favor, there are no factual allegations showing what decision Hardis ratified. Plaintiffs allege that "Defendant Hardis initiated, directed, and/or caused the creation of a police incident report." (SAC 102.) It goes without saying that Hardis cannot ratify his own conduct. And Hardis (as the Beachwood Superintendent) certainly could not ratify Pekarski's (a member of the Beachwood Police) conduct. *Cf. Mazur v. Garison*, No. 24-13193, 2025 U.S. Dist. LEXIS 227741, at *10 (E.D. Mich. Aug. 4, 2025) ("The Pinckney Chief of Police cannot ratify the decision of a Livingston County prosecutor"). Thus, Plaintiffs' ratification theory fails.

**c. Failure to train**

Under the third *Monell* theory of liability, a plaintiff can "seek to establish that a municipality followed an unofficial custom of inadequately training or supervising the employees who caused the harm." *Gambrel v. Knox County, Kentucky*, 25 F.4th 391, 408 (6th Cir. 2022). To do so, "the

---

[8] Ratification may take the form of a failure to investigate, provided there have been 'multiple earlier inadequate investigations [that] concern comparable claims.'" *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)). Plaintiffs here do not allege a "failure to investigate" ratification theory.

Supreme Court has required plaintiffs to prove two demanding elements." *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997)). First, "a municipality must have acted with 'deliberate indifference' to the fact that its inadequate training or supervision would lead its agents to violate constitutional rights." *Id.* "To show this deliberate indifference, a plaintiff must prove that the violation of a clearly established right was a 'known or obvious consequence' of the lack of training or supervision." *Id.* (citing *Connick*, 563 U.S. at 61). "This standard usually requires proof that a municipality's employees engaged in a 'pattern of similar constitutional violations' separate from the conduct that harmed the plaintiff." *Id.* Second, "a municipality's improper training or supervision must have 'actually caused' the plaintiff's injury." *Id.* "This element requires proof of causation from the common law of torts: but-for (or factual) causation and proximate causation." *Id.* Here, there are no factual allegations supporting a failure-to-train theory. Plaintiffs simply allege a legal conclusion that "Defendant Board is liable under 42 U.S.C. 1983 because the constitutional violations described herein were cause by . . . failure to train, and deliberate indifference." (SAC 200.) Without factual allegations supporting this legal conclusion, Plaintiffs' failure-to-train theory fails under *Twombly* and *Iqbal*.

**d. Custom**

Under the "custom of tolerance" theory, a plaintiff must allege (1) "'a clear and persistent' pattern of unconstitutional conduct by municipal employees;" (2) "the municipality's 'notice or constructive notice' of the unconstitutional conduct;" (3) "the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction;'" and (4) "that the policy of inaction was the 'moving force' of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by

the conduct of the municipality rather than simply by the conduct of the municipal employee.'" *D'Ambrosio*, 747 F.3d at 387-88 (quoting *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996)). "[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F3d 426, 433 (6th Cir. 2005); *Shelby Cnty. Sheriff*, 891 F.3d 1241, 1248 (6th Cir. 1989)). Here, just like Plaintiff's failure-to-train theory, there are no factual allegations supporting custom-of-tolerance theory. Plaintiffs simply allege a legal conclusion that "Defendant Board is liable under 42 U.S.C. 1983 because the constitutional violations described herein were cause by official customs . . . and deliberate indifference." (SAC 200.) Without factual allegations supporting this legal conclusion, Plaintiffs' custom-of-tolerance theory fails under *Twombly* and *Iqbal*.

**4. The Court grants Plaintiffs' leave to file the SAC**

In sum, the Court finds that Plaintiffs' claim for First Amendment retaliation against the Beachwood Defendants is not futile. The Court, however, finds that the remaining claims are futile. Accordingly, the SAC is deemed filed as of the date of this Memorandum Opinion & Order. Counts II, III, IV and V of the SAC against the Beachwood Defendants are dismissed with prejudice.

**F. The remaining motions are denied as moot**

"The general rule is that filing an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). "Alternatively, district courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are 'substantially identical to the original complaint.'" *Id.* (quoting *Mandali v. Clark*, No. 2:13-cv-1210, 2014 U.S. Dist. LEXIS 143850, at *4 (S.D. Ohio Oct. 9, 2014)).

Because the Court finds that the SAC states a first amendment retaliation claim against the

Beachwood Defendants, the Court denies their Motion to Dismiss as moot. Pekarski did not file an Opposition to Plaintiffs' Second Motion for Leave. Pekarski, however, did file a Motion for Judgment on Pleadings concerning Plaintiffs' initial Complaint and an Opposition to the First Motion for Leave. The SAC is not substantially identical to either the original Complaint or the proposed FAC. Accordingly, the Motion for Judgment on the Pleadings is moot, and the Court denies it without prejudice. And finally, because the Court is granting Plaintiffs' Second Motion for Leave, Plaintiffs' First Motion for Leave is denied as moot.

## III. Conclusion

For the reasons set forth herein, the Second Motion for Leave (Doc. No. 27) is GRANTED in part and DENIED in part. The Court finds that Plaintiffs' proposed claim for First Amendment retaliation against the Beachwood Defendants in the Second Amended Complaint (the "SAC") (Doc. No. 27-1) is not futile. The Court, however, finds that the remaining claims are futile. Accordingly, the SAC is deemed filed as of the date of this Memorandum Opinion & Order. Counts II, III, IV and V of the SAC against the Beachwood Defendants are dismissed with prejudice. All claims remain pending against Pekarski. Because the SAC is now the operative complaint, the Motion to Dismiss (Doc. No. 14), Motion for Judgment on the Pleadings (Doc. No. 16), and First Motion for Leave (Doc. No. 19) are DENIED as moot. Additionally, the Motion to Disregard (Doc. No. 21), the Motion to Preserve (Doc. No. 22), the AI Motion (Doc. No. 33) and the Motion to Supplement (Doc. No. 38) are each DENIED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: October 23, 2026